IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |
| SHEILA BROWN, *et al.* v. AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION No. 99-20593 |
| This document relates to: | |
| LINDA HARMON, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20082 |
| DUWANDA ROBBINS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20081 |
| JANICE BINION, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20119 |
| LILLIAN CHANDLER, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20120 |
| PATRICIA MOSLEY, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20122 |
| MARY F. SANDERS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20121 |
| - and - BRENDA STALLINGS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.* | MDL Case No. 02-20118 |

**PRETRIAL ORDER NO. _____**

AND NOW, this _____ day of _____, 2003, it is hereby, ORDERED, ADJUDGED and DECREED, that plaintiffs' Renewed Motion to Remand in the above-captioned actions is hereby denied, with each party to bear its own costs and counsel fees.

APPROVED AND SO ORDERED:

_____
Harvey S. Bartle, III, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |
| SHEILA BROWN, *et al.* v. AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION No. 99-20593 |
| This document relates to: | |
| LINDA HARMON, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | MDL Case No. 02-20082 |
| DUWANDA ROBBINS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.;* | MDL Case No. 02-20081 |
| JANICE BINION, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.;* | MDL Case No. 02-20119 |
| LILLIAN CHANDLER, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.;* | MDL Case No. 02-20120 |
| PATRICIA MOSLEY, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.;* | MDL Case No. 02-20122 |
| MARY F. SANDERS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.;* | MDL Case No. 02-20121 |
| - and - BRENDA STALLINGS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.* | MDL Case No. 02-20118 |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF THE
RESPONSE OF WYETH TO PLAINTIFFS' MOTION TO REMAND**

**PRELIMINARY STATEMENT**

These cases are a textbook example of plaintiffs' efforts in Mississippi to deprive Wyeth of its right of removal to federal court and to run roughshod over Wyeth's rights under the Settlement agreement. For example:

- Although plaintiffs claim to be eligible to sue, many of them have submitted echocardiograms that do not even purport to demonstrate FDA–positive valvular regurgitation.

- The complaints cavalierly seek punitive damages for downstream opt-out plaintiffs.

- Many plaintiffs have not even bothered opting out.

- Plaintiffs have joined initial and downstream opt-out plaintiffs in single complaints in violation of this Court's PTOs.

Plaintiffs are now desperately trying to avoid this Court's jurisdiction, presumably because they believe they can proceed with impunity and without rules in Mississippi state court. Their latest salvos are these remand motions that could have and should have been filed nearly two years ago. The issues in these related remand motions are, however, straightforward and have already been decided by this Court in other PTOs. In particular, plaintiffs sued Wyeth and a number of Mississippi pharmacies and phentermine manufacturers in Mississippi state court. Wyeth removed these cases to federal court. Plaintiffs' remand motion argues that removal was improper because the phentermine and pharmacy defendants did not consent. Plaintiffs' motion demonstrates a stunning disregard of this Court's ruling that the phentermine defendants have been fraudulently joined in the diet drug litigation, and that no product liability cause of action may be maintained against pharmacies under Mississippi law. This Court, when surveying the overwhelming evidence of such improper forum manipulation, has found that such joinder is nothing more than a "sham." *Anderson v. Am. Home Prods. Corp.*,

220 F. Supp. 2d 414, 425 (E.D. Pa. 2002).  It found that plaintiffs "are engaging in

improper efforts to prevent [Wyeth] from exercising its statutory right . . . to remove

cases based on diversity of citizenship to the federal courts in Louisiana and Mississippi."

*Id.*  Yet by reading plaintiffs' motion, one would not know this ruling even existed.

These cases have been pending in this Court for nearly two years.  During that

time, Wyeth repeatedly has attempted to confer with plaintiffs' counsel about the

substantive and procedural defects in these cases.  Wyeth's efforts have been met with

silence, though at one point plaintiffs' counsel agreed to a scheduling order that would

require them to work with Wyeth to streamline those cases and conform them to the

Settlement Agreement.

When Wyeth's efforts to cooperate proved unsuccessful, it filed a Motion to

Dismiss the majority of plaintiffs in these cases.  Then, on November 10, 2003, just days

after Wyeth filed its Motion to Dismiss Certain Plaintiffs, plaintiffs filed a "renewed"

motion to remand rehashing arguments already rejected by this Court.  First of all,

plaintiffs have not filed a previous remand motion before this Court, so the title

"renewed" is a misnomer.  Moreover, importantly, plaintiffs' remand motion is nothing

more than a procedural delay tactic designed to garner even more time to forestall

dismissal of most of the plaintiffs in these cases.  Because both the pharmacy and

phentermine defendants were fraudulently joined in these cases, removal was proper and

plaintiffs' remand motion should be summarily denied.[1]  Not only that, the Court should,

---

[1] Wyeth also properly removed the *Harmon, Chandler, Mosely, Sanders,* and *Stallings* cases under 28
U.S.C. § 1452(a), which permits removal of cases related to a bankruptcy proceeding.  Plaintiffs Diane
Carothers, Coretta Hairston, Johnnie Humphries, and Samantha Toles (*Harmon)*; Elaine Turner
(*Chandler*); Mary Stewart and Sylvia Hemphill (*Mosely*); Dee Andrews, Bettye Davis, Laleta Reeves, and
Bobbie Love (*Sanders*); and Priscilla Burney and Sonia Pritchard (*Stallings*) filed for bankruptcy or

Footnote continued on next page

without further ado, grant Wyeth's Motion to Dismiss certain plaintiffs.  With this

response, Wyeth files a cross-motion to dismiss additional plaintiffs for lack of personal

jurisdiction.

## FACTUAL BACKGROUND

*Harmon v. Wyeth* is a diet drug case brought by thirty-three plaintiffs; *Robbins v.*

*Wyeth* by seven plaintiffs; *Binion v. Wyeth* by forty-six plaintiffs, forty-four of whom are

still in the case;[2] *Chandler v. Wyeth* by ten plaintiffs; *Mosely v. Wyeth* by forty plaintiffs;

*Sanders v. Wyeth* by fifty plaintiffs, forty-eight of whom are still in the case;[3] and

*Stallings v. Wyeth* by fifty-four plaintiffs.  Plaintiffs commenced *Harmon* and *Robbins* on

or about August 14, 2001, and *Binion, Chandler, Mosely, Sanders,* and *Stallings* on or

about October 16, 2001, in the Circuit Courts of Noxubee and Hinds Counties,

Mississippi.  A large number of plaintiffs allege that they are residents of other states.[4]

---

Footnote continued from previous page

maintained open bankruptcies after their use of diet drugs, so their claims constitute assets of their bankruptcy estates.  Because their claims relate to the bankruptcy proceedings, the Court has bankruptcy jurisdiction over their claims.

[2] Plaintiffs Eula Richardson and Elaine Steward have dismissed their claims without prejudice.  *See* Notice of Voluntary Dismissal, dated November 7, 2001 (Ex. A). Wyeth's opposition to remand is supported by the exhibits attached hereto.

[3] Plaintiffs Velda Smith and Ruxandra Olariv have dismissed their claims without prejudice.  *See* Notice of Voluntary Dismissal, dated November 7, 2001 (Ex. B).

[4] In *Binion*, plaintiffs William Peyton Smith, Stephanie Owens, Debbie Turney-Miller, Lori Harris, Gail Lynn Hudson Douglas, Keith Hachtel, Tracy Adams, Frances P. McClure, Lizette Purnell, and Beverly J. Fleming are allegedly citizens of Tennessee; Anne S. Ellis is an alleged citizen of Texas; and Garry Joe Girdley is an alleged Arkansas citizen. *Binion* Compl. ¶¶ 1.1-1.45 (The *Binion* Complaint is attached as Ex. B to Wyeth's Motion to Dismiss Certain Plaintiffs).

   In *Mosely*, plaintiffs Beverly Toliver, Jerry Smith, Dorothy Owens, Crystal Franks, Francelia Williams, Windia Jones, Barbara Chalmers, Diane Thompson, Valenta Allen-Williams, Charles Stewart, and Debra Hill are allegedly citizens of Tennessee; Doris McSwine, is an alleged citizen of Illinois; Philip Cohen and Debbie Girdley are alleged Arkansas citizens; and Stephen Breimer is allegedly a citizen of California. Compl. ¶¶ 1.1-1.40 (The *Mosely* Complaint is attached as Ex. E to Wyeth's Motion to Dismiss Certain Plaintiffs).

Footnote continued on next page

Plaintiffs allege that they have valvular heart disease as a result of ingesting fenfluramine (Pondimin), dexfenfluramine (Redux), and/or phentermine.[5]  In bringing these actions, presumably plaintiffs purport to have exercised "downstream opt-out" rights pursuant to the Nationwide Class Action Settlement Agreement With Wyeth (the "National Settlement" or "Settlement Agreement"), though the complaints are silent on this point.

The complaints name the following Wyeth entities as defendants:  American Home Products Corp., A.H. Robins Co., Inc.,[6] Wyeth-Ayerst Pharmaceuticals, Inc., and Wyeth Laboratories, Inc.,[7] (collectively "Wyeth").  The Wyeth entities are incorporated in Delaware and have their principal places of business in either Pennsylvania or New

---

Footnote continued from previous page

In *Sanders*, Lasonya Thomas, Marcia Woods, Therial Taylor, Sharon Holland-Sims, Traci Johnson, Kay Cunningham, Peggie Butler, Sandra Beaver, Harry Beaver, Amanda Beaver, Ellouise Evans, Jo Ann Mathes, and Patricia Harwell are allegedly citizens of Tennessee; John Pate is an alleged citizen of Alabama; Senatra Irby is an alleged Texas citizen; and Jacqueline Mister is allegedly a citizen of Missouri. Compl. ¶¶ 1.1-1.49 (The *Sanders* Complaint is attached as Ex. G to Wyeth's Motion to Dismiss Certain Plaintiffs).

In *Stallings*, Edsell Williford, Ramona Johnson, Karen Washington-Hackman, Marsha Wright, Valerie Givens-Rowan, Sharon Ballinger, and Harriet Stewart are allegedly citizens of Tennessee; Tammy Henderson, Richard Eifling, and Melissa Milano are alleged citizens of Arkansas; Lisa Gross is an alleged Georgia citizen; Elayna Cooper, Donna Morgan, Bruce McMillan, and Johnie Brown are allegedly citizens of Alabama; Jacalyn Jones is an alleged Florida resident; and Teretha Williams is allegedly a citizen of Kentucky. Compl. ¶¶ 1.1-1.54 (The *Stallings* Complaint is attached as Ex. H to Wyeth's Motion to Dismiss Certain Plaintiffs).

[5] *Harmon* Compl. ¶¶ 1.1-1.33; 4.6; *Robbins* Compl. ¶¶ 1.1-1.7; 4.6; *Binion* Compl. ¶¶ 1.1-1.45; 4.6; *Chandler* Compl. ¶¶ 1.1-1.10; 4.6; *Mosely* Compl. ¶¶ 1.1-1.40; 4.6; *Sanders* Compl. ¶¶ 1.1-1.49; 4.6; *Stallings* Compl. ¶¶ 1.1-1.54; 4.6 (The *Chandler, Harmon* and *Robbins* Complaints are attached as Exhibits C, D and F, respectively, to Wyeth's Motion to Dismiss Certain Plaintiffs).

[6] On August 3, 1998, Defendant A.H. Robins Co., Inc. ("Robins"), formerly a Delaware corporation with its principal place of business in Richmond, Virginia, was merged into American Home Products Corp. ("AHPC") and ceased to exist as a separate entity.  On March 11, 2002, AHPC changed its name to Wyeth. Thus, Wyeth removed on behalf of Robins and AHPC.  Wyeth is a Delaware corporation with its principal place of business in New Jersey.

[7] On March 11, 2002, defendant Wyeth-Ayerst Laboratories division of American Home Products Corporation changed its name to Wyeth Pharmaceuticals.  Wyeth Pharmaceuticals is an unincorporated division of Wyeth.  Nonetheless, Wyeth removed on behalf of Wyeth Pharmaceuticals.

Jersey. Defendant Wyeth sold Pondimin and Redux.[8] The complaints name between four and eight pharmacies (collectively the "Pharmacy Defendants"), between two and eight of which are allegedly citizens of Mississippi.[9] Plaintiffs' complaints also name as defendants between ten or eleven non-Mississippi phentermine manufacturers (the "Phentermine Defendants").[10] Finally, the complaints name Interneuron Pharmaceuticals, Inc., a non-Mississippi corporation that allegedly sold Dexfenfluramine.[11] Plaintiffs allege strict product liability, failure to warn, breach of warranty, negligence, "wantoness" (sic), fraud, misrepresentation, suppression, and conspiracy against all defendants. Compls. ¶¶ 4.1-10.28.

Wyeth timely removed *Robbins and Harmon* on or about September 18, 2001, with supplemental removal notices filed on May 13, 2002. Wyeth timely removed *Binion, Chandler, Mosely, Sanders,* and *Stallings* on or about December 6, 2001, based on diversity of citizenship and bankruptcy jurisdiction. (Notices of Removal are attached as composite Ex. C). These cases were transferred from the Southern District of Mississippi before the motions to remand were decided. Plaintiffs have now renewed their motions in this Court.

---

[8] *Harmon* Compl. ¶¶ 1.34-1.36; 1.41; *Robbins* Compl. ¶¶ 1.8-1.10; 1.15; *Binion* Compl. ¶¶ 1.46-1.48; 1.53; *Chandler* Compl. ¶¶ 1.11-1.13; 1.18; *Mosely* Compl. ¶¶ 1.41-1.43; 1.48; *Sanders* Compl. ¶¶ 1.50-1.52; 1.57; *Stallings* Compl. ¶¶ 1.55-1.57; 1.62.

[9] *Harmon* Compl. ¶ 1.37; *Robbins* Compl. ¶ 1.11; *Binion* Compl. ¶ 1.49; *Chandler* Compl. ¶ 1.14; *Mosely* Compl. ¶ 1.44; *Sanders* Compl. ¶ 1.53; *Stallings* Compl. ¶ 1.58.

[10] *Harmon* Compl. ¶¶ 1.38-1.40; 1.42-1.44; 1.46-1.50; *Robbins* Compl. ¶¶ 1.12-1.14; 1.16-1.18; 1.20-1.24; *Binion* Compl. ¶¶ 1.50-1.52; 1.54-1.56; 1.58-1.61; *Chandler* Compl. ¶¶ 1.15-1.17; 1.19-1.21; 1.23-1.26; *Mosely* Compl. ¶¶ 1.45-1.47; 1.49-1.51; 1.53-1.56; *Sanders* Compl. ¶¶ 1.54-1.56; 1.58-1.60; 1.62-1.65; *Stallings* Compl. ¶¶ 1.59-1.61; 1.63-1.65; 1.67-1.70.

[11] *Harmon* Compl. 1.45; *Robbins* Compl. ¶ 1.19; *Binion* Compl. ¶ 1.57; *Chandler* Compl. ¶ 1.22; *Mosely* Compl. ¶ 1.52; *Sanders* Compl. ¶ 1.61; *Stallings* Compl. ¶ 1.66.

**ARGUMENT**

I.     **THE PHARMACY DEFENDANTS ARE FRAUDULENTLY JOINED
       BECAUSE THIS COURT HAS HELD THAT MISSISSIPPI LAW
       PRECLUDES CLAIMS AGAINST A PHARMACY FOR PROPERLY
       FILLING A PHYSICIAN'S PRESCRIPTION**

Although one would never know it from reading plaintiffs' motion, this Court --

more than a year ago -- held that factually and legally there is no basis for asserting a

product liability cause of action against pharmacies under Mississippi law in the diet drug

litigation. *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414 (E.D. Pa. 2002).   In

so holding, this Court merely followed controlling precedent from the Mississippi

Supreme Court precluding claims against pharmacies where, as here, the pharmacy is

alleged to be liable simply because it filled a prescription. *Moore* ex rel. *Moore v.*

*Memorial Hospital of Gulfport*, 825 So. 2d 658 (Miss. 2002).[12]  As this Court also

explained in its opinion, the Mississippi Supreme Court's decision followed on the heels

of two federal court decisions applying Mississippi law that similarly rejected liability

against pharmacies, finding them to be fraudulently joined under Mississippi law.  *See In*

*re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001); *Teague v. Parke-*

*Davis*, 3:00CV224LN (S.D. Miss. Dec. 5, 2001) (Ex. D).  *Anderson*, 220 F. Supp. 2d at

423-24;[13]  *see also Louis v. Wyeth-Ayerst Pharm., Inc.*, No. 5:00 CV 102LN, slip op. at 8-

---

[12] The Mississippi Supreme Court noted two exceptions to this rule: a pharmacy could have a duty to warn "where it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question" and/or "where pharmacists fill prescriptions in quantities inconsistent with the recommended dosage guidelines." 825 So. 2d at 665. Neither exception is applicable here.

[13] This Court also held that, based on five years of experience in the diet drug litigation, plaintiffs have no intent to prosecute claims against pharmacies. *See Weaver v. Wyeth*, slip. op. at 11-13; *Stanger v. Wyeth*, No. 03-20086, slip. op. at 9 (E.D. Pa. May 29, 2003); *Anderson v. Am. Home Prods.*, 200 F. Supp. 2d 414, 422 (E.D. Pa. 2002).

9 (S.D. Miss. Sept. 25, 2000) (holding pharmacy fraudulently joined in a diet drug case) (Ex. E).

These authorities are squarely applicable here. Because the Pharmacy Defendants were fraudulently joined, their citizenship is irrelevant and there is complete diversity in this action. Furthermore, because these defendants were fraudulently joined, Wyeth did not need to obtain their consent to removal. *See Anderson,* 220 F. Supp. 2d at 424.

## II.    THE PHENTERMINE DEFENDANTS WERE FRAUDULENTLY JOINED, SO THEIR CONSENT TO REMOVAL IS NOT REQUIRED

Plaintiffs' complaints name ten or eleven Phentermine Defendants, all of which are incorporated and have their principal place of business outside of Mississippi. Plaintiffs do not contend that the joinder of these defendants destroys diversity, but argue that removal was improper because the Phentermine Defendants did not consent to removal. Again, reading plaintiffs' motion, one would never know that this Court decided this very issue over a year ago.

In the first place, as to *Harmon* and *Robbins*, plaintiffs cannot raise lack of consent as an obstacle to removal. Wyeth removed *Harmon* and *Robins* on the basis of fraudulent joinder of the phentermines on or about May 13, 2002. Under 28 U.S.C. 1447(c), plaintiffs had 30 days to file a remand motion based on procedural defects in the removal. *Id.* The unanimity rule, which requires consent of all properly named defendants, is a procedural rather than a jurisdiction objection that can be waived by failure to assert it. *See, e.g., Matthews v. Key Bank U.S.A. Nat. Ass'n*, No. CIV.A. 99-1799, 1999 WL 398716 at *1 (E.D. Pa. Jun. 17, 1999). Plaintiffs did not file remand motions in either *Harmons* or *Robbins* within 30 days after the supplemental removal.

As such, they have waived alleged procedural defects in the removal notices, including any arguments based on lack of consent. At any rate, in the *Anderson* opinion, this Court examined and analyzed five years of history in the diet drug litigation, including in Mississippi, and concluded that "defendants have met their heavy burden of persuasion that plaintiffs have no real intention in good faith to seek a judgment against the phentermine defendants and that as a result the phentermine defendants are fraudulently joined in these actions."[14] *Anderson*, 220 F. Supp. 2d at 422.  The Court relied on the dearth of scientific evidence presented by the plaintiffs, the voluntary dismissal of phentermine defendants by diet drug plaintiffs and the failure to seriously take any phentermine defendant to trial.  The Court reiterated this holding in two subsequent decisions.  *See Weaver v. Wyeth*, slip. op. at 11-13; *Stanger v. Wyeth*, No. 03-20086, slip. op. at 9 (E.D. Pa. May 29, 2003).

There is no distinction between this case and those others.  The record submitted in those cases and relied upon by this Court applies with equal force here.  As such, the phentermine defendants have been fraudulently joined and their lack of consent should be disregarded.

---

[14] Wyeth filed the Declaration of Daniel Pariser in *Anderson v. American Home Prods. Corp.*, MDL Docket No. 1203, No. 01-20182 (Document number 203098).  Wyeth incorporates the declaration by reference.

**III.    THE COURT ALSO HAS BANKRUPTCY JURISDICTION OVER THE CLAIMS OF DIANE CAROTHERS, CORETTA HAIRSTON, JOHNNIE HUMPHRIES, SAMANTHA TOLES, ELAINE TURNER, SYLVIA HEMPHILL, MARY STEWART, DEE ANDREWS, BETTYE DAVIS, LALETA REEVES,  BOBBIE LOVE, PRISCILLA BURNEY AND SONIA PRITCHARD**

Because the pharmacies and phentermine defendants have been fraudulently joined, this Court has jurisdiction in these seven cases in their entirety and the Court need engage in no further analysis.  Nevertheless, if the Court decides it does not have jurisdiction over the entire case, it has bankruptcy jurisdiction over the claims of Diane Carothers and Coretta Hairston in *Harmon,* Elaine Turner in *Chandler*; Sylvia Hemphill and Mary Stewart in *Mosely*; Dee Andrews, Bettye Davis, and Laleta Reeves in *Sanders*; and Priscilla Burney in *Stallings* because they filed for bankruptcy subsequent to their putative ingestion of Redux and/or Pondimin. Similarly, Johnnie Humphries and Samantha Toles (*Harmon*), Bobbie Love (*Sanders*) and Sonia Pritchard (*Stallings*) were involved in bankruptcy proceedings subsequent to their putative ingestion of diet drugs. *See* Bankruptcy Docket Reports of Diane Carothers, Coretta Hairston, Johnnie Humphries, Samantha Toles, Elaine Turner, Sylvia Hemphill, Mary Stewart, Dee Andrews, Bettye Davis, Laleta Reeves, Bobbie Love, Priscilla Burney and Sonia Pritchard (composite Ex. F); *Alford v. DirecTV Inc.*, No. 4:00CV191LN, slip op. at 9 (S.D. Miss. May 24, 2001) (finding bankruptcy jurisdiction over 136 plaintiffs, twenty-five of whom had filed bankruptcy) (Ex. G).  In violation of the Bankruptcy Code, Ms. Carothers, Ms. Hairston, Ms. Humphries, Ms. Toles, Ms. Turner, Ms. Hemphill, Ms. Stewart, Ms. Andrews, Ms. Davis, Ms. Reeves, Ms. Love, Ms. Burney, and Ms. Pritchard (the "Bankrupt Plaintiffs") apparently failed to take any steps to reopen their bankruptcies and schedule their putative causes of action against Wyeth.  Upon discovery of their

- 10 -

causes of action, instead of reopening their bankruptcies and amending their schedules to

disclose this asset to the public and to their creditors, the Bankrupt Plaintiffs simply

commenced this lawsuit in pursuit of their own pecuniary benefit and to the detriment of

their creditors. the Bankrupt Plaintiffs' claims strike at the core of the Bankruptcy Code.

This Court should exercise jurisdiction to oversee pretrial proceedings.  It should then

transfer the case back to the transferee court, which can refer the case to the Bankruptcy

court for ultimate disposition, if it deems appropriate.  28 U.S.C. § 157(a).

> **A.    This Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 1334(b) As The Bankrupt Plaintiffs' Claims Are "Related To" Their Bankruptcy Proceedings**

Under 28 U.S.C. § 1452(a), any claim is removable to federal court based on its

relationship to a bankruptcy action provided the court has jurisdiction under 28 U.S.C. §

1334.  *See Dixon v. First Family Fin. Servs.*, 276 B.R. 173, 180 (S.D. Miss. 2002).

Under Section 1334(b), a federal court has original, but not exclusive jurisdiction over

"civil proceedings arising under Title 11 or arising in or related to a case under Title 11."

*Id.* at 180 (citing 28 U.S.C.A. § 1334(b)).  To determine whether a district court has

jurisdiction under 28 U.S.C. § 1334, "it is only necessary to determine whether a matter

is at least related to the bankruptcy." *Id.* (citing *Allen v. City Fin. Co.*, 224 B.R. 347, 351

(S.D. Miss. 1998)).

A plaintiff's personal injury suit is related to that party's bankruptcy because any

monetary judgment would add to the assets of the bankruptcy estate.  *See In Re O'Dowd*,

233 F.3d 197, 202 (3d Cir. 2000); *Thomas v. R.J. Reynolds Tobacco Co.*, 259 B.R. 571,

575 (S.D. Miss. 2001).  Indeed, personal injury actions that accrued prior to

commencement of bankruptcy, even if they were not yet filed, are property of the

bankruptcy estate. *See Wischan v. Adler*, 77 F.3d 875, 877 (5th Cir. 1996); *Feist v.*

*Consol. Freightways,* 100 F. Supp. 2d 273, 278 (E.D. Pa. 1999); *Lawrence v. Jackson*

*Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992), *aff'd*, 43 F.3d 642 (5th Cir.

1992).[15] As such, these claims may only be prosecuted by the trustee of the bankruptcy

estate, the real party in interest under Federal Rule of Civil Procedure 17(a).[16] *See*

*Lawrence,* 837 F. Supp. at 779.

      Bankruptcy jurisdiction is even proper when the subject bankruptcy proceedings

are closed prior to the filing of an action related to the bankruptcy estate, as is the case for

Ms. Carothers, Ms. Hairston, Ms. Humphries, Ms. Toles, Ms. Turner, Ms. Davis, Ms.

Love, Ms. Reeves, Ms. Stewart, Ms. Burney, and Ms. Pritchard.[17] *See Gandy v. People's*

---

[15]    In order to prevent debtors from shielding assets from creditors, the Bankruptcy Code imposes an express, affirmative and continuing duty to disclose "all assets", including contingent and unliquidated claims. *Id.* at 207-8; *see* 11 U.S.C. §§ 521, 541, 1125 & 1306. With respect to causes of action, the debtor need not know all the facts or the legal basis for its claim. *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999). Rather, if prior to confirmation of a plan the debtor has enough information to suggest a potential cause of action, even one that is contingent or unliquidated, the claim must be disclosed. *Id.* ("[T]he importance of this disclosure duty cannot be overemphasized."); *In re Gunsmith's Inc.*, 271 B.R. 487, 491 (S.D. Miss. 2000) (Wingate, J.) ("[A] debtor in bankruptcy must disclose any litigation likely to arise in a non-bankruptcy context.").

[16]    Although it is possible that the trustee can abandon an estate's right to pursue a personal injury claim, abandonment requires knowledge of the claims. In this case, Ms. Turner's two bankruptcies were closed in December 2000 and June 2001. Ms. Davis, Ms. Humphries, Ms. Love, Ms. Reeves, Ms. Pritchard, Ms. Carothers, Ms. Toles, Ms. Hairston, Ms. Burney, and Ms. Stewart's bankruptcies were closed in August 1998, October 1999, April 2000, January 2001, January 2001, February 2001, March 2001, July 2001, February 2002, and August 2002, respectively. Ms. Hemphill's and Ms. Andrew's bankruptcies are still open. They did not schedule their putative claims against Wyeth, did not seek or receive an abandonment of their putative claims, and even as of now, have filed nothing with the Bankruptcy Court to provide notice of their violations and failures. *See* Bankruptcy Court Docket Reports (composite Ex. F).

[17] *In re Bass*, 171 F.3d 1016 (5th Cir. 1999), is not to the contrary. In that case, the court stated that a claim filed after a bankruptcy estate is closed does not "have an effect on the administration of the estate." *Id.* at 1022. However, the plaintiff in that case was seeking an injunction against the debtor defendant's trust fund in order to enforce a stipulated judgment obtained in the bankruptcy proceeding. *Id.* at 1020. The debtor's failure to satisfy the judgment occurred after the estate was closed. In other words, the plaintiff's claim arose *after the estate was closed*. Consequently, the claim did not affect the administration of the estate.

*Bank & Trust Co.*, 224 B.R. 340, 343 (S.D. Miss. 1998); *see also Dixon*, 276 B.R. at 180-181 (without disclosure of debtor's causes of action, they cannot be abandoned or administered, and continue as property of estate, "even though the case is closed or the plan is confirmed"); *Chickaway v. Bank One, Dayton, N.A.*, 261 B.R. 646, 651 & n.5 (S.D. Miss. 2001) (deeming bankruptcy jurisdiction appropriate, despite fact that bankruptcy case was not currently open, and noting possibility that the bankruptcy would be reopened).

In *Gandy*, a Chapter 7 debtor-borrower brought an action against the lender for the lender's alleged improper use of collateral protection insurance. The debtor had obtained the loan in May 1994, declared bankruptcy in May 1995, was granted a discharge in August 1995, and filed suit against the lender in October 1997. The court held that bankruptcy jurisdiction existed, *even though the bankruptcy estate had been closed.* The court explained that "[c]laims or causes of action that a debtor may have upon filing of a bankruptcy petition are . . . property of the bankruptcy estate," regardless of when a debtor decides to prosecute those claims. *Gandy*, 224 B.R. at 344-45; *see also* 11 U.S.C. § 350(b) (providing that an estate "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause").

Here, the Bankrupt Plaintiffs' claims are related to their bankruptcies even though Ms. Carothers, Ms. Hairston, Ms. Humphries, Ms. Toles, Ms. Turner, Ms. Davis, Ms. Love, Ms. Reeves, Ms. Stewart, Ms. Burney, and Ms. Pritchard's bankruptcies are closed. The Wyeth diet drugs in question were withdrawn from the market in *September 1997*, are the subject of one of the largest mass torts in history, and are the target of unprecedented publicity. the Bankrupt Plaintiffs necessarily had to ingest the diet drugs

before September 1997, and, due to the publicity surrounding the drugs' withdrawal from the market had sufficient information to suggest a potential cause of action. Thus, Ms. Carothers, Ms. Hairston, Ms. Turner, Ms. Hemphill, Ms. Stewart, Ms. Andrews, Ms. Davis, and Ms. Reeves, and Ms. Burney's potential claims were in existence at the time they filed their bankruptcies, and Ms. Humphries, Ms. Toles, Ms. Love and Ms. Pritchard's potential claims were in existence during the time that their bankruptcies were open. However, in the past year, they have not sought to reopen or amend their bankruptcies in order properly to schedule their claims. Consequently, their personal injury claims, and the nondisclosure of those claims, are at least "related to" their bankruptcies and fall within 28 U.S.C. § 1334(b).

**B.    This Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 1334(e)**

28 U.S.C. § 1334(e) provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case. . . ." 11 U.S.C. §541(a).

In *Dixon v. First Family Fin. Servs.*, 276 B.R. 173 (S.D. Miss. 2002), the Southern District of Mississippi upheld removal under § 1334(e) because the claim against the defendants had been neither disclosed to nor abandoned by the bankruptcy trustee:

> Causes of action are such property and until abandoned by the bankruptcy trustee or administered in the bankruptcy case, remain the property of the bankruptcy estate even though the case is closed or the plan is confirmed. It is axiomatic that, without

> disclosure of property, it can be neither abandoned nor administered. Moreover, subsections 554(a) and (b) of the Bankruptcy Code provide that property of the estate may only be abandoned, after notice and a hearing, by the trustee, or by order of the court. As there is no evidence that [plaintiffs] disclosed their claims against Defendants to the Bankruptcy Court, and no evidence of a hearing by the Bankruptcy Court on the issue of abandonment of Plaintiffs' claims against Defendants, the Court finds that their claims remain the property of their bankruptcy estates pursuant to section 554(d). The Court therefore finds that it has subject matter jurisdiction over this case under 28 U.S.C. § 1334(e). Accordingly, the Court finds that the instant action was properly removed to this court.

*Id.* at 181 (citations omitted); *see also In re Gandy*, 299 F.3d 489, 499 (5th Cir. 2002)

("The bankruptcy court and the district court acting as one unit have exclusive

jurisdiction over all of the property, 'wherever located,' of the Debtor, and of property of

her estate. 28 U.S.C. § 1334(e).").

Here, as in *Dixon,* there is no evidence that the Bankrupt Plaintiffs ever disclosed

or scheduled their claims against the defendants. As in *Dixon*, the Court should uphold

removal and retain jurisdiction.

C.    **This Court Should Not Abstain or Equitably Remand this Matter**

1.    **Mandatory Abstention Is Inapplicable**

The Bankrupt Plaintiffs bear the burden of proving that abstention is appropriate.

*Alford v. DirecTV Inc.*, slip op. at 9; *In re Talon Holdings, Inc.*, 221 B.R. 214, 219

(Bankr. N.D. Ill. 1998). 28 U.S.C. § 1334(c)(2) provides as follows:

> Upon a timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Under 28 U.S.C. § 1334(c)(2), a court must abstain from exercising bankruptcy jurisdiction only when a number of criteria are met. Two of those criteria are: (1) that the proceeding was commenced in a state forum and can be timely adjudicated in that forum; and (2) that the cause of action "is essentially one that is premised upon state law." *In re McCray*, 209 B.R. 410, 414 (Bankr. N.D. Miss. 1997). *But cf. In re Wood*, 825 F.2d 90, 97 n.34 (5th Cir. 1987) ("We are mindful that, alone, this circumstance [that the suit is based on state law] should not be dispositive.") (citing 28 U.S.C. § 157(b)(3)). Both are of no small moment here.

In *Alford*, the court held that mandatory abstention did not apply, and on that basis declined to remand the case because the debtor plaintiffs made no effort to show that their case could be timely adjudicated in state court. *Alford*, slip op. at 8-9 (finding no diversity jurisdiction but retaining case on basis of bankruptcy jurisdiction); *see also WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605-06 (S.D. Tex. 1999) ("A naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy the requirement [of mandatory abstention].") (internal quotation marks omitted); *Hosp. Serv. Dist. No. 3 v. Fid. & Deposit Co. of Md.*, No. Civ. A. 99-0752, 1999 WL 294795, at *7 (E.D. La. May 11, 1999) (refusing to apply mandatory abstention because the plaintiff had made no showing that its claims could be timely adjudicated in state court, even though the court believed that timely adjudication was likely).

Here, the Bankrupt Plaintiffs have made no effort to demonstrate that the Mississippi state court could timely adjudicate their claims. *See In re Georgou*, 157 B.R. 847, 850-51 (N.D. Ill. 1993) (holding "unsupported assertion that the state court docket

- 16 -

will move faster than that of the federal court" insufficient to sustain plaintiff's burden on abstention to demonstrate timely adjudication of action).

Finally, this Court should declare this matter a core proceeding pursuant to 28 U.S.C § 157(b)(2)(A), which provides that "[c]ore proceedings include, but are not limited to (A) matters concerning the administration of the estate." *See also In re Wood*, 825 F.2d at 96 ("[S]ection 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings."). As set forth above, the Bankrupt Plaintiffs apparently did not disclose their putative claims against Wyeth in their bankruptcy schedules. Moreover, despite having notice of their claims, they simply filed their state court action for their own pecuniary gain instead of reopening their bankruptcies, properly seeking leave to amend their schedules, and seeking Bankruptcy Court approval. Even as of now, the Bankrupt Plaintiffs have apparently failed to file any pleadings in their bankruptcies and continue to pursue the claims in violation of the Bankruptcy Code. *See In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999) (barring certain causes of action under the doctrine of judicial estoppel based on the Debtor's failure to schedule or disclose certain claims in his bankruptcy schedules); *In re Gunsmith's Inc.*, 271 B.R. at 489 (same).

In this matter, the Bankrupt Plaintiffs' concealment of estate property (or at a minimum, their subsequent failure to disclose) is a "matter[] concerning the administration of the estate." 11 U.S.C. § 157 (b)(2)(A). Therefore, this suit is a core proceeding under Section 157, which equates to "arising in" or "arising under" jurisdiction under 1334(b). As such, mandatory abstention does not apply under 1334(b)(2), which only applies to cases that are "related to a case under title 11, *but not*

- 17 -

*arising under title 11 or arising in a case under title 11*." 28 U.S.C. § 1334(b)(2)

(emphasis added); *see also Dixon*, 276 B.R. at 183 (finding in a similar situation that

"under section 157(b)(2)(O), the state court cases of [the plaintiffs] are core proceedings .

. . [which] means that this Court is not required to abstain from hearing Plaintiffs' case

pursuant to 28 U.S.C. § 1334(c)(2)"); *Chickaway*, 261 B.R. at 649.

### 2.    Discretionary Abstention Is Inapplicable

Although a federal court may abstain from exercising bankruptcy jurisdiction "in

the interest of justice, or in the interest of comity with state courts or respect for state

law," 28 U.S.C. § 1334(c)(2), such discretionary abstention also is not warranted here.

Courts have identified numerous factors that they typically consider when presented with

a request for discretionary abstention.[18] These factors primarily relate "to the presence,

predominance and difficulty of resolving any state law issues, as well as proper respect

for the role of state courts in addressing and deciding issues of state law." *Blakeley v.

United Cable Sys.*, 105 F. Supp. 2d 574, 582 n.9 (S.D. Miss. 2000). The mere presence

of state law issues, however, "cannot, of itself, be sufficient to compel remand." *In re

Branded Prods., Inc.*, 154 B.R. 936, 947 (Bankr. W.D. Tex. 1993). In *Alford*, for

---

[18] These factors generally have been formulated as follows: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficulty or unsettled nature of the applicable law; (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. *See, e.g., Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993).

example, the court refused to apply discretionary abstention to the state law causes of

action of 136 plaintiffs, twenty-five of whom were debtors in bankruptcy.  The plaintiffs,

the court observed, had not argued that the state law issues were "difficult or unsettled."

*Alford*, slip op. at 10.  And addressing the "relatedness or remoteness" factor of

discretionary abstention, it noted:

> The court is not persuaded that the efficient administration of the
> bankruptcy estates would not be compromised if the case were
> remanded, particularly in view of the fact that this case is "related
> to" more than one bankruptcy estate; that the facts relating to
> whether any of the twenty-five bankruptcy plaintiffs actually
> scheduled their claims are not known; and that the trustees for the
> states which have been closed evidently have not been notified of
> the claims.  In light of the foregoing, the court is not persuaded
> that the relationship between these plaintiffs' bankruptcies is
> necessarily remote and that remand is warranted.

*Id.* at 10-11.

The analysis in *Alford* addresses the issues in this case. the Bankrupt Plaintiffs

make no argument why a federal court could not competently address the state law issues

present in this case.  Moreover, just like in *Alford, Dixon,* and *Chickaway*, the Bankrupt

Plaintiffs' failure to schedule their alleged causes of action and, more importantly, their

efforts to pursue their alleged claims for their own pecuniary gain justify this Court's

retention of jurisdiction and denial of Plaintiffs Motion to Remand.

In addition, federal jurisdiction presents no comity concern here, since virtually

no discovery has been conducted as to the plaintiffs and the state court has had very little

involvement in the case.  Nor can the Bankrupt Plaintiffs credibly claim that federal

jurisdiction presents an inconvenience, since they chose a federal forum by filing for

bankruptcy.  Taken together, these factors and the analysis in *Alford,* as well as the